PIERCE, Judge.
This is an appeal by Marvin Frazier Stanley from an order entered by the Pasco County Circuit Court, denying without hearing a Petition to Vacate Judgment and Sentence filed by Stanley pursuant to Criminal Procedure Rule No. 1, F.S.A. ch. 924 Appendix.
On September 15, 1965, Stanley was informed against in said Circuit Court for breaking and entering a dwelling house with intent to commit a felony. Upon arraignment he entered a plea of guilty to said charge and on September 27, 1965, he was adjudged guilty and sentenced to serve four years in the State Prison. On July 18, 1966, Stanley filed his Petition and Motion to Vacate aforesaid, and on December 16, 1966, the Circuit Judge entered Order, which, after reciting that the Court had “reviewed the proceedings”, denied the petition.
Stanley has appealed to this Court, contending merely that the Circuit Judge was in error “in summarily denying the Petition for post conviction relief without affording a plenary hearing on the issues presented.” This is the verbatim “Point on Appeal” filed by Stanley’s Public Defender counsel.
Deciphering Stanley’s petition as best we can, it alleged: that when he was arrested and incarcerated in the Dade City jail on August 18, 1965, he was uneducated .and inexperienced in legal matters; that he was not represented by counsel at the time of his “conviction”; that he had “no fair opportunity to secure counsel”; that he pleaded guilty “without a reasonable time to talk with a friend or an attorney”; that he “did not fully understand and know” that he was pleading guilty; that he did not know he could be sent to prison as a result of his guilty plea; that he did not waive his right to Court appointed counsel when he pleaded guilty without the aid of counsel, even though he told the Court he didn’t want counsel; that when he was first arrested he was held incommunicado for more than forty-eight hours and was interrogated by prolonged questioning by the Dade City Police during said time and was unable to contact or consult with any member of his family and was refused an attorney “when he asked for one”, as a result of which he confessed to said “armed burglary”; that he later pleaded guilty because he “felt it was no use to argue”; that when he confessed he had not been advised of his rights to remain silent; that he was never brought before a magistrate of any kind “for the charge that was later placed against him” ; that he did not “intelligently and competently” exercise his waiver of counsel; that at the time of his. Court appearance the trial Judge did not sufficiently inquire into the “essential factors” necessary to determine “the effectiveness of any supposed waiver of counsel”. We have examined and carefully reviewed these sometimes inter-related contentions, aforesaid.
When such a motion under C.P.R. No. 1 is filed, it is incumbent upon the trial Court to examine the Court files and records in connection with the original prosecution to determine, first, the truth or falsity of the allegations thereof insofar as. such records might reflect light thereon, and, secondly, evaluate the seriousness of such contentions so tested as indicating whether any of the petitioner’s constitutional rights had been denied or abridged. At that point, as C.P.R. No. 1 says, “[u]n-less the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause * * * ” a hearing to be had to “determine the issues and make findings of fact and conclusions of law with respect thereto”. On the other hand, however, if the Court finds, from an inspection of the motion and files and records of the Court, that the petitioner’s contentions are unfounded, either as a matter of law or by being con *33 clusively refuted by the Court files and records, the motion may b« summarily denied without hearing. Such determination is, of course, subject to appellate review, such as the case here.
A meticulous analysis of the record here, which contains everything that was before the lower Court, discloses each and every of the contentions set forth in the petition to be without substance, either because they had been held legally insufficient in previous adjudicated cases or because they were disproven factually when subjected to the strong light of the Court’s own records. That is, all except one item, namely, whether there had been a waiver —i. e., an understanding, competent and intelligent waiver- — by petitioner of his right to counsel at the time of his Court appearances. We will explore this contention more fully. The motion, of course, allowing for inexpert pleading, makes a strong case for the lack of an intelligent waiver. So we go to the Court files and records.
The recorded minutes of the Circuit Court for September 15, 1965, show the following on the occasion of Stanley’s arraignment and plea:
“By the Court (Judge Kelly) :
Stanley, do you wish to be represented by an Attorney?
Defendant (Stanley) No, Sir.
Court: If you don’t have the funds, the court will appoint one.
Defendant: Yes, your Honor.
Court: Understanding this, do you want the Court to appoint an attorney ?
Defendant: No, Sir.
Court: You do not have the funds?
Defendant: No, Sir.
Court: You don’t want a lawyer ?
Defendant: I understand that what the lawyer does and what I do about it might be substantially different.
Court: What is this man charged with?
Mr. McClain (Asst. State Attorney): Breaking and Entering
Court: What is the penalty ?
Mr. McClain: Ten years.
Court: Do you realize by a plea of guilty you are subjecting yourself to a prison sentence of a least five years at hard labor ? The State Attorney is going to read the information. If you don’t understand it, say so and we will explain it to you.
Mr. McClain: Do you answer to the name of Marvin Frazier Stanley?
Defendant: Yes, Sir.
Mr. McClain: How old are you?
Defendant: Twenty-three.
(The Assistant State Attorney, Joe A. McClain, read the entire information).
Court: Do you understand the charge?
Defendant: Yes, Sir.
Mr. McClain: And to that charge, how do you plead, guilty or not guilty ?
Defendant: Guilty.
* * * * * *
(To defendant) (Has anyone promised you any kind of deal? Said — I know the Judge and he is going to let you off light or anything like that?)
Defendant: No, Sir.
Court: You cure pleading guilty only because you are guilty.
Defendant: Yes, Sir. I am pleading guilty because of the fingerprints, I don’t remember doing it. * * *
*34 Court: Do you know of your own knowledge you are guilty?
Defendant: No, Sir.
Court: Do you remember going into the place ?
Defendant: Yes.
Court: What did you go in there for?
Defendant: I didn’t got (sic) in there to commit nothing.
Court: After you got in there, what did you do?
Defendant: I guess I took that stuff I had with me in my trailer.
Court: Do you remember going in the place ? Do you remember taking the stuff out of it?
Defendant: Yes, Sir.
Court: Do you remember taking it out and putting it in your trailer?
Defendant: Yes, Sir.
Court: Now is the time to say so if you don’t.
Defendant: Yes, Sir.
Court: Are you guilty or aren’t you?
Defendant: I am guilty.
Court: And you know you are guilty?
Defendant: Yes, Sir.
Court: Has anyone told you they are going to harm you or hurt you if you don’t plead guilty?
Defendant: No Sir.
Court: You did so freely and voluntarily?
Defendant: Yes, Sir.” (Emphasis supplied).
The recorded minutes of September 27, 1965, show the following at the time of judgment and sentence:
“Court: Stanley, you came before this Court on September 15, 1965 and entered a plea of guilty and refused counsel.
Defendant: Yes, Sir.
Court: You understand that as a matter of constitutional right you are entitled to be represented by a lawyer. Is that correct ?
Defendant: Yes, Sir.
Court: Understanding that, you refuse counsel?
Defendant: Yes, Sir.
Court: You understand that if you don’t have the funds, the Court will hire one to represent you?
Defendant: Yes, Sir." (Emphasis supplied).
This 2nd District Court, in an excellent opinion written by Judge Sherman Smith, had occasion to explore into this question in King v. State, Fla.App. 1963, 157 So.2d 440. In that case the defendant King, 24 years old, had pleaded guilty to the offense of grand larceny, representing to the Court that “no one had threatened him or promised him anything to get him to plead guilty, and that he understood that he could receive a trial if he wanted one.” He was adjudged guilty and sentenced to prison. About a year later he filed petition under C.P.R. No. 1, contending that when he entered his plea and was sentenced he did not have the assistance of counsel, he was not offered counsel, was not informed of his right to counsel, and that he was therefore denied his constitutional rights. He asked that the judgment and sentence be vacated and he be granted a new trial. The trial Court summarily denied the motion without hearing, from which order the defendant appealed. This Court, after reviewing Gideon v. Wainwright and other related cases, stated as follows:
“In each instance where an accused appears in court without a lawyer, the court *35 should advise him of his constitutional right to the assistance of counsel and determine whether or not he is able to employ a lawyer to represent him. If the accused is unable to employ a lawyer, then the court must offer to appoint counsel to represent the accused. Of course, the accused may reject the offer, thereby waiving his constitutional right to the assistance of counsel. However, this waiver must be intelligently and understandingly made. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Carter v. People of State of Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946) ; and see Annotation 93 L.Ed. 137, § 3 at 140-142. Whether there has been an understanding, intelligent, competent and voluntary tvaiver depends in each case upon the particular facts and circumstances surrounding that case. Johnson v. Zerbst, supra, and Rice v. Olson, supra. In any event, when an indigent accused appears in court without a lawyer, the court must either appoint counsel for the defendant or determine that there has been a competent and intelligent waiver of the constitutional right to counsel before the court has authority to proceed.
* * * * * *
[I]f the record shows or if there is evidence which shows that the court offered counsel to defendant, then the burden rests upon the defendant to allege and prove that he did not intelligently and understandingly reject such offer.”
(Emphasis supplied)
For other cases to the same effect, see Dixon v. State, Fla.App.1964, 163 So.2d 771 and Kelly v. State, Fla.App.1965, 175 So.2d 542. In the Dixon case, Judge Allen for this Court, following the rationale of the King case, supra, held:
“Appellant Dixon, having attempted by motion under Criminal Procedure Rule No. 1, F.S.A. ch. 924 Appendix, to have a sentence imposed upon conviction of aggravated assault vacated and set aside, here appeals an order denying that motion for relief. Dixon’s motion alleged, in essence, that at no time from the date of his arrest to the day of sentencing was he represented by counsel or financially able to secure the services of counsel.
The lower court, ‘having reviewed the record,’ denied the motion upon finding that appellant had waived all of his constitutional rights, including the right to counsel. Upon examination of the record of the original proceedings we conclude that it does not, for reasons enunciated in King v. State, Fla.App.1963, 157 So. 2d 440, (filed some months after entry of the order here appealed) substantiate the lower court’s finding.”
Obviously, the record in the appellate Court in the Dixon case did not sustain what the trial Judge indicated was shown by the trial Court records, namely, that petitioner had waived his constitutional rights at the time of trial by intelligently refusing counsel. And from the opinion, the inference is strongly compelling that if the trial Court record had shown that counsel had been offered to the petitioner at trial and he had intelligently and understandingly refused such offer, such would have constituted an effectual waiver.
And in Kelly, the trial Court, similarly to Dixon, had found that “[t]he records in this case clearly show that petitioner’s right to counsel was fully explained to him prior to arraignment and a plea of guilty was voluntarily entered by the petitioner after having waived his right to counsel”, and thereupon denied the motion to vacate brought under Rule No. 1. Upon appeal from such denial, the 1st District Court found, as did this Court in Dixon, that the record on appeal did not show that the trial Court records, as exemplified to the appellate Court, contained anything to indicate that petitioner had waived his constitutional rights by declining counsel. The opinion found that the only “showing” as to such waiver consisted of the bare allega *36 tions in the State Attorney’s answer to Kelly’s petition that petitioner had been advised of his right to counsel but at no time had made any request to the Court that he wanted such counsel. The appellate Court rightly held that such mere allegation in an adversary pleading could not be considered as equivalent to the affirmative showing of Court records; and that if the Court records were silent on the point, a waiver could not be presumed, notwithstanding such allegation in the answer. Again, the conclusion from the opinion is irresistible that if the Court files and record had shown the defendant had been offered counsel or had been told that the Court would appoint him counsel if he so desired, and he had thereupon intelligently spurned the offer, it would have constituted a waiver.
We turn now to the record before this Court in the case sub judice to determine from what happened when petitioner’s case was originally called for trial, whether there was a waiver, and if so, if it was legally effective. We hold that, tested by the principles enunciated in the King, Dixon and Kelly cases, supra, there was an effectual waiver.
Petitioner was plainly told by the trial Judge at the arraignment that he would appoint counsel if petitioner did not have funds and desired to be so represented. Stanley stated that “understanding this”, he did not want the Court to appoint an attorney for him. Then he added significantly that “I understand that what the lawyer does and what I do about it might be substantially different”. This gratuitous statement on petitioner’s part is most enlightening on the point of whether his waiver of counsel was “understanding, intelligent, competent and voluntary”. As to his general intelligence and appreciation of his position in the case, his further statement that “I am pleading guilty because of the fingerprints” is also illuminating.
And at the subsequent hearing, before he was adjudged guilty and sentenced, he reiterated his refusal of counsel, and reiterated that he understood he was entitled to be represented by an attorney “as a matter of constitutional right” and that if he did not have the funds the Court would appoint counsel to represent him.
The foregoing was preserved as a part of the official records when the criminal case was before the Court. There is no allegation anywhere in the Rule 1 petition filed in the lower Court that Stanley did not make such statements, or that such statements made in open Court were not true, or that he did not fully understand the nature and import of the questions asked him which prompted such statements on his part.
We therefore hold that Stanley’s petition under Rule 1 did not make such showing, in the light of “the files and records of the case”, as entitled him to a hearing, and that the trial Judge was correct in summarily denying the petition.
Order affirmed.
LILES, C. J., and HOBSON, J., concur.